UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ALFREDO KUBA, | NO. CIV. S-05-0794 WBS JFM |
| Plaintiff, | |
| v. | ORDER RE: MOTION FOR <u>PRELIMINARY INJUNCTIVE AND DECLARATORY RELIEF</u> |
| MARINE WORLD JOINT POWERS AUTHORITY, an unknown business entity; SIX FLAGS THEME PARKS INC., d/b/a Six Flags Marine World, a Delaware corporation; PARK MANAGEMENT CORPORATION, d/b/a Six Flags Marine World, a California corporation; JOE MECK, an individual; DALE ARNOLD, an individual; AARON ARKY, an individual; CITY OF VALLEJO, d/b/a Marine World Joint Powers Authority; VALLEJO POLICE DEPARTMENT; LIEUTENANT SALINAS, an individual; OFFICER DOUGLAS WILCOX, an individual; SERGEANT SCHROEDER, an individual; OFFICER THOMPSON, an individual; OFFICER HAMMRICK, an individual; OFFICER BAUTISTA, an individual; RAY MATELA, an individual; CHRIS NEVASCA, an individual; MICAH BAKER, an individual; RON CERVANTEZ, an individual; and DOES 1 through | |

1

96, inclusive,

        Defendants.

----oo0oo----

Plaintiff Alfredo Kuba seeks declaratory and injunctive relief establishing that he has a constitutional right of freedom of expression at the front entrance of Marine World Park, and that defendants' public assembly policy is unconstitutional. Defendant City of Vallejo has filed a statement of non-opposition to the motion, pursuant to Local Rule 78-230(c). Defendants Park Management Corp., d/b/a Six Flags Marine World, Six Flags Theme Parks, Inc., Dale Arnold, Joe Meck, Ray Matela, Chris Nevasca, Micah Baker, and Ron Cervantez oppose this motion.

I.   Factual and Procedural Background

In 1997, defendant Six Flags, Inc. contracted to manage a portion of Six Flags Marine World with the Marine World Joint Powers Authority ("MWJPA"), a public agency created by agreement between the City of Vallejo and the Redevelopment Agency of the City of Vallejo. (Pl.'s Mot. for Preliminary Injunctive and Declaratory Relief, Evans Decl. Ex. 6 (Amended and Restated 1997 Management Agreement Relating to Marine World).) MWJPA's purpose is to accept conveyance of the assets, assume the liabilities, and protect the City of Vallejo's interests related to Marine World ("the park"). (Id. at 2.) Moreover, MWJPA bears the "overall responsibility for all activities and facilities at Marine World." (Id.) Defendant Six Flags, Inc. operates the park pursuant to a long-term lease, paying nominal rent in the amount of one dollar per year per forty acres of land (id. Ex. 7 (Parcel Lease) at 5), and receiving a management fee and 80% of

2

the net cash flow generated by the combined operations of the park. (Id., Ex. 3 (U.S. Securities and Exchange Commission Form 10-K) at 2.)  Defendant MWJPA receives the remaining 20% of the net revenue. (Id., Ex. 9 (Revenue Sharing Agreement) at 5.)

The land at the park is divided into two categories: a public parcel and a private parcel. (Id., Ex. 7 at 3.)  The private parcel is leased by Six Flags, Inc., but the public parcel is, as its name suggests, public land. (Id.)  The public parcel includes parking facilities, the front entrance, the entry area including ticket sales and admission facilities, public walkways, paths, restrooms, dining facilities, and other areas intended for use by patrons. (Id., Ex. 8 (Reciprocal Easement Agreement) at 6.)

Plaintiff has been arrested twice while at Marine World in the "public parcel" section, once while on a sidewalk, and then again while on the grass outside the entrance of the park. (Id., Ex. 1 (Trial Transcript).)  Plaintiff was charged with trespass under California Penal Code § 602(o), but the case was dismissed based in part on a finding that the entire park, including where plaintiff was arrested, was open to the general public. (Id.)

Marine World has a public assembly policy ("the policy") explaining that the park is a "privately managed property that invites the general public." (Id., Ex. 10 (Public Assembly Policy at 1).)  The policy further requires that any individual or group "desiring to assemble for the purpose of exercising constitutional rights" must make a written request and provide personal information about themselves at least seven days

3

in advance of the intended exercise of those rights. (Id.) Assembly is permitted only in three locations that have been expressly designated for assembly by Marine World. (Id.) The policy prohibits the distribution of leaflets, handouts, fliers, and other writings regardless of content and also prohibits "grossly or gruesome displays." (Id. at 1-2.) The policy also prohibits assembly altogether on "high volume days." (Id. at 2 ("Due to increased traffic activities during high volume days, and to avoid problems with ingress and egress of vehicular and/or pedestrian traffic, no assembly can occur [on blackout days] . . . .").) These blackout days are: Memorial Day Weekend, July 4th Weekend, Labor Day Weekend, and Easter Weekend. (Id.)

Plaintiff seeks to exercise his free speech rights with a group of no more than ten people[1] at Marine World on Memorial Day weekend, just two weeks from the date of oral argument on this motion. (Kuba Decl. ¶ 6.) Additionally, plaintiff requests immediate injunctive relief enjoining defendants from enforcing their Public Assembly Policy and/or a court order for declaratory relief that would establish his ability to exercise his constitutional right of freedom of expression at the front entrance of Marine World.

II. Discussion

    A. Injunctive relief

"To obtain a preliminary injunction, the moving party must demonstrate either (1) probable success on the merits and

---

[1] Plaintiff's counsel represented at oral argument that there are generally three people present at any given protest organized by plaintiff, but that no more than ten people would attend.

4

1  the possibility of irreparable injury, or (2) that serious
2  questions are raised and the balance of hardships sharply favors
3  the moving party.  These are not separate tests, but are the ends
4  of a continuum; the greater the relative hardship to the moving
5  party, the less probability of success must be shown." <u>Nat'l
6  Ctr. for Immigrants Rights, Inc. v. I.N.S.</u>, 743 F.2d 1365, 1369
7  (9th Cir. 1984) (internal citations omitted).  Plaintiff seeks a
8  preliminary injunction, arguing that the balance of hardships
9  tips heavily in his favor and that he has a high probability of
10 success on the merits.

          1.    <u>Balance of Hardships</u>

12        Defendants' interest here is to "provide freedom from
13 the disruption of normal business operations and freedom from
14 interference with customer convenience, as well as safety to
15 guests."  (Defs.' Opp'n to Mot. for Preliminary Injunctive Relief
16 6.)  However, defendants fail to provide any evidence that the
17 safety of their guests is in any way threatened by plaintiff's
18 plan for a group of three to ten people to stand outside the
19 entrance of the park, hold signs, and distribute leaflets.  Thus,
20 this threat to customer safety is purely speculative.

21        Moreover, although it may be reasonable to assume that
22 defendants' customers may be caused some inconvenience as they
23 attempt to enter the park, inconvenience to customers does not
24 clearly outweigh the value of exercising first amendment rights.
25 <u>Carreras v. City of Anaheim</u>, 768 F.2d 1039, 1046 (1985)
26 ("Annoyance and inconvenience, however, are a small price to pay
27 for preservation of our most cherished right" (quoting <u>Wirta v.
28 Alameda-Contra Costa County Transit Dist.</u>, 68 Cal. 2d 51, 62

(1967), overruled on other grounds by L.A. Alliance For Survival v. City of L.A., 22 Cal. 4th 352 (2000))). The disruption of normal business relationships will also be short-lived, as plaintiff does not seek to enter the park, but merely plans for his group to protest at the entrance. However, defendants may experience some increased disruption or added expenses because they will have to collect the trash resulting from plaintiff's distribution of leaflets.

Plaintiff's potential hardships, by contrast, are significant and irreparable. Denying plaintiff his right to exercise his freedom of expression is a denial of constitutional rights. Unlike monetary injuries, "[a]ny loss of First Amendment freedoms, even briefly, can constitute irreparable injury." Id. at 1214 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, the balance of hardships clearly tilts in plaintiff's favor.

    2. <u>Probability of Success on the Merits</u>

Plaintiff seeks the invalidation of defendants' permit policy governing the exercise of rights to free speech and assembly.[2] Thus, an analysis of the constitutionality of defendant's policy is required to determine the likelihood of

---

[2] Plaintiff does not specify whether his challenge is "facial" or "as-applied." A "facial" challenge alleges that the policy on its face is unconstitutional and "creates an unacceptable risk of the suppression of ideas." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998). An "as-applied" challenge requests that the court find the policy unconstitutional as applied to the activity in which the plaintiff in particular seeks to engage. Id. Based on plaintiff's arguments for declaratory relief that the policy is unconstitutional, and the fact that plaintiff seeks injunctive relief in order to enable him to protest on Memorial Day weekend, the court presumes that plaintiff challenges the constitutionality of defendants' policy both facially and as-applied.

6

plaintiff's success on the merits.

Where possible, the court should attempt to address issues that may be resolved without addressing federal constitutional law. "Generally speaking, district courts must address issues of state constitutional law prior to addressing issues of federal constitutional law." Int'l Soc'y for Krishna Consciousness v. City of L.A., 966 F. Supp. 956, 959 (C.D. Cal. 1997). In particular, "where the state provisions offer more expansive protection than the federal constitution, we must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." Id. (citing Vernon v. City of L.A., 27 F.3d 1385, 1391-92 (9th Cir. 1994)). Because "[i]t is widely recognized that the Liberty of Speech provision of the California Constitution provides more expansive protection of speech than does the First Amendment to the United States Constitution," id., the court will first look to the constitutionality of defendants' actions under California law.

      a.   Public Forum Analysis

A determination that a place is a public forum is merely "constitutional shorthand for the proposition that . . . government cannot regulate speech-related conduct in such places except in narrow ways shown to be necessary to serve significant government interests . . . even if [there are] ample alternatives for communicati[on]." Prisoners Union v. Cal. Dep't of Corrs., 135 Cal. App. 3d 930, 935 (1982) (quotation omitted). The first question in an application of the public forum doctrine is whether a particular place is a public forum. Making this

7

determination under California law requires determining whether "the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." Int'l Soc'y, 966 F. Supp. at 961 (quoting Prisoners Union, 135 Cal. App. 3d at 939); see also In re Hoffman, 67 Cal. 2d 845, 849 (1967); U.C. Nuclear Weapons Labs v. Lawrence Livermore Lab., 154 Cal. App. 3d 1157, 1164 (1984).  "Thus, for the purposes of the California Liberty of Speech Clause, the 'public forum' doctrine is not limited to traditional public forums such as streets, sidewalks, or parks . . . ."[3]  Carreras, 768 F.2d at 1045.

---

[3] Under the broad protection offered by the California Liberty of Speech Clause, even privately owned facilities that are open to the public are subject to the public forum doctrine. See Robins v. Pruneyard Shopping Ctr., 23 Cal. 3d 854, 908 (1979). Additionally, although defendant Six Flags, Inc. is a private party, and a showing of state action is essential to establish the occurrence of a constitutional violation, Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 838 (9th Cir. 1999), actions taken by private parties may constitute state action in certain circumstances. The government may become "sufficiently entangled in the actions of a private party to warrant a requirement that such conduct conform to constitutional standards of behavior." Holodnak v. Avco Corp., 514 F.2d 285, 289 (2d Cir. 1975).

A lessor-lessee relationship between the government and a private actor and interconnected finances have been found to warrant state responsibility for the private actor's conduct. See, e.g., Avco, 514 F.2d at 289-90 (applying constitutional strictures where the government and a private corporation had a "symbiotic" relationship in that the "enterprise to which the Government contributed land, buildings, and equipment, and for which Avco supplied the labor force, was operated to their mutual benefit"); Burton, 365 U.S. at 719-720, 726 (concluding that where the government leased property to a private company, furnished heat for the premises, made structural repairs at its own expense, and retained the right to place directional signs on the exterior of the space, constitutional standards apply "as certainly as though they were binding covenants written into the agreement itself").

Here, the state agency formed by the City of Vallejo, MWJPA, owns the land, infrastructure, and buildings in question, and private entity defendant Six Flags, Inc. leases this land for a nominal fee. The management of the park is given over to

8

The compatibility of speech-related activity at a government institution is tested in the following way: "(1) if the activity is peaceful, lawful, and does not interfere with the functions performed, it cannot be banned; (2) if there is interference, the availability of alternative channels is addressed; (3) [w]here the relevant audience is found only in a particular place . . . [t]he bare possibility of alternative ways to communicate the same message should not suffice to defeat the first amendment claim." Allred v. Shawley, 232 Cal. App. 3d 1489, 1499 (1991) (internal quotations omitted). The party who is attempting to prevent or halt expressive activity bears the burden of establishing "basic incompatibility." Int'l Soc'y, 966 F. Supp. at 964.

Defendants here have not met their burden of establishing the "basic incompatibility" of plaintiff's exercise of his freedom of speech with the primary purposes of the entrance, parking lot, and walkways of the park. In Carreras, the court found that the exterior walkways and parking areas of a stadium and convention center were areas where "the public was free to come and go," and the primary purpose of these areas was "to facilitate parking and allow for the free flow of pedestrian and vehicular traffic." 768 F.2d at 1045. The court concluded

---

defendant Six Flags, Inc. and the profits are split between the MWJPA and Six Flags, Inc. Additionally, upon entering into this joint venture with defendant Six Flags, Inc., defendant MWJPA retained "overall responsibility for all activities and facilities at Marine World." Thus, it is clear that the relationship between the City of Vallejo and private entity defendants is a closely intertwined partnership such that constitutional standards of behavior apply here.

9

1 that solicitation was not incompatible with that purpose.  Id.
2          Here, there is no indication that plaintiff seeks to do
3 anything other than peacefully and lawfully protest with a small
4 group outside the park.  Plaintiff's proposed exercise of his
5 freedom of speech is also not incompatible with the primary
6 purpose of the area at the entrance of the park.  Like the
7 stadium entrance in Carreras, the purpose of the park entrance
8 here is to facilitate the entrance into the park for members of
9 the public who wish to enter and are willing to pay a fee to do
10 so.  On Memorial Day in particular, large numbers of people seek
11 to enter the park.  The addition of ten members of the public to
12 these crowds seems negligible, even if the additional persons are
13 carrying signs and distributing leaflets.
14          Moreover, the presence of peaceful protestors is less
15 incompatible with the activity of entering the park than the
16 presence of people soliciting money is with respect to entrance
17 into a stadium.  Solicitation of a potential customer involves
18 some degree of competition with the activity of paying a fee to
19 enter the stadium, whereas providing information and exercising
20 the right to free speech outside of a park does not.  Thus,
21 plaintiff's proposed activity does not compete or interfere with
22 the activity of processing customers.  Finally, there is no other
23 effective location to speak to the relevant audience, as
24 plaintiff and his group are protesting the care of animals at the
25 park, and it is unclear where visitors to the park would
26 congregate other than at the park itself.  For these reasons, the
27 areas around the entrance of the park are public fora under the
28 California Liberty of Speech Clause.

b.  <u>Time, Place, and Manner Restrictions</u>

Next, the court turns to the test applied to regulations in public fora. "[I]n a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" <u>Savage v. Trammell Cow Company, Inc.</u>, 223 Cal. App. 3d 1562, 1573 (1990) (citations omitted); <u>see also</u> <u>Kuba v. 1-A Agricultural Ass'n</u>, 387 F.3d 850, 858 (9th Cir. 2004) (citing <u>Ward v. Rock Against Racism</u>, 497 U.S. 781, 791 (1989)).[4] If even one prong of this test is not satisfied, then the government's restrictions are unconstitutional. <u>See</u> <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1205 (9th Cir. 1994).

First, there is no indication that defendants seek to justify their regulations based on the content of the offending speech, as the blackout days in the policy are based on days of high attendance and not the expected content of the messages that protestors would speak. Furthermore, it appears that defendants may have a significant governmental interest in regulation. Defendants presumably have an interest in preventing the disruption of their business operations and interference with customers, as well as ensuring the safety of their guests. The

---

[4] With respect to time, place, and manner standards, California law has been "fashioned from a long line of Supreme Court cases," and federal standards may be applied to give meaning to this doctrine. <u>Kuba</u>, 387 F.3d at 857-58.

11

interest in controlling large crowds and ensuring the orderly movement and control of people has been found to be a substantial consideration.  See, e.g., Kuba, 387 F.3d at 858 (finding the interests in "preventing traffic congestion and ensuring the safety of pedestrians and drivers alike" significant); Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 650 (1981) ("[I]t is apparent that the State's interest in the orderly movement and control of such an assembly of persons [gathered at a fair] is a substantial consideration.").

Plaintiff does not seek to protest in the parking lot, but rather plans to protest at the entrance to the park, so it is not clear that traffic congestion provides a basis for the state interest.  Yet plaintiff does seek to protest on a weekend where the park expects greater than usual attendance, so defendants' interest in orderly crowd control may be significant.  This interest may also be hampered by plaintiff's plan to distribute leaflets, as his interactions with the public will be somewhat prolonged and the leaflets are likely to be disposed of immediately, thereby creating additional trash for defendants to clean.  Significantly, however, defendants have not presented any evidence to establish the strength of this interest.

Moreover, the policy devised by defendants is not narrowly tailored to the interests they seek to protect. Defendants have failed to show that plaintiff's proposed communicative activity endangers their interests in crowd control in any significant way.  See Lim v. City of Long Beach, 217 F.3d 1050, 1054 (9th Cir. 2000) ("Traditionally and logically . . . the party seeking to restrict protected speech has the burden of

justifying that restriction.")  At a minimum, the policy requires seven days of advance notice before a person can be given permission to protest.  Protest on the weekends during which the largest audience is likely to be present is banned altogether, no matter how many people seek to peacefully protest.  Leaflets, handouts, fliers, and other writings may not be distributed on any day, which severely hampers the ability of a protestor to pass along a meaningful message to the public.  Assembly may only take place in one of three areas in the park.  These strictures prevent a great deal of activity beyond what is necessary to achieve defendants' interest in crowd control and safety, and are not narrowly-tailored to this interest.  Therefore, defendants' policy appears to contain unconstitutional time, place, and manner restrictions.[5]

For the foregoing reasons, plaintiff has shown a strong probability of success on the merits and additionally that the balance of hardships clearly weighs in his favor.  Therefore, he has established that a preliminary injunction is warranted.

B.   Declaratory Relief

The court has heard this motion on an expedited schedule on plaintiff's request, in an effort to accommodate his interest in exercising his first amendment rights over the weekend of May 27, 2006 (Memorial Day Weekend).  By granting

---

[5] It is additionally unclear that there are sufficient alternative channels of communication, particularly given that the weekends with the largest audiences are "blackout dates" for assembly. However, "[t]he failure to satisfy any single prong of the test invalidates the requirement," Grossman, 33 F.3d at 1200, so analysis of the existence of alternative channels is unnecessary here.

13

plaintiff a preliminary injunction, the court has ensured that he will be able to exercise his rights on that weekend. Further relief at this time is unnecessary to ensure that plaintiff's constitutional rights to freedom of speech and assembly are secure, and the court therefore declines to address his request for declaratory relief at this time.

     IT IS THEREFORE ORDERED that plaintiff's motion for injunctive relief enjoining defendants from enforcing their Public Assembly Policy as it pertains to plaintiff's proposed activities over the weekend of May 27, 2006 be, and the same hereby is, GRANTED.

     IT IS FURTHER ORDERED that plaintiff's motion for declaratory relief be, and the same hereby is, DENIED.

DATED: May 17, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14