1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11   ALFREDO KUBA,
                                        NO. CIV. S-05-0794 WBS JFM
12            Plaintiff,

13        v.                            MEMORANDUM AND ORDER RE:
                                        MOTION FOR SUMMARY JUDGMENT
14
     MARINE WORLD JOINT POWERS
15   AUTHORITY, an unknown business
     entity; SIX FLAGS THEME PARKS
16   INC., d/b/a Six Flags Marine
     World, a Delaware corporation;
17   PARK MANAGEMENT CORPORATION,
     d/b/a Six Flags Marine World, a
18   California corporation; JOE MECK,
     an individual; DALE ARNOLD, an
19   individual; AARON ARKY, an
     individual; CITY OF VALLEJO,
20   d/b/a Marine World Joint Powers
     Authority; VALLEJO POLICE
21   DEPARTMENT; LIEUTENANT SALINAS,
     an individual; OFFICER DOUGLAS
22   WILCOX, an individual; SERGEANT
     SCHROEDER, an individual; OFFICER
23   THOMPSON, an individual; OFFICER
     HAMMRICK, an individual; OFFICER
24   BAUTISTA, an individual; RAY
     MATELA, an individual; CHRIS
25   NEVASCA, an individual; MICAH
     BAKER, an individual; RON
26   CERVANTEZ, an individual; and
     DOES 1 through 96, inclusive,
27
              Defendants.
28

                                    1

1                              ----oo0oo----

2          Plaintiff Alfredo Kuba filed this lawsuit pursuant to

3    42 U.S.C. § 1983, alleging that defendants violated his civil

4    rights by arresting him while he was engaged in a peaceful

5    protest.  Presently before this court is the motion of defendants

6    Police Assistant Joe Thompson, Officer Jerome Bautista, Officer

7    William Hamrick, Officer Douglas Wilcox, Sergeant Kelly

8    Schroeder, Lieutenant Joel Salinas, and City of Vallejo ("Vallejo

9    Defendants") for summary judgment.

10   I.   Factual and Procedural Background

11         In 1997, defendant Six Flags, Inc. contracted to manage

12   a portion of Six Flags Marine World ("Marine World") with the

13   Marine World Joint Powers Authority ("MWJPA"), a public agency

14   created by agreement between the City of Vallejo and the

15   Redevelopment Agency of the City of Vallejo.  (Defs.' Mot. for

16   Summ. J., Oiler Decl. Ex. A (Joint Exercise of Powers

17   Agreement).)  MWJPA's purpose is to accept conveyance of the

18   assets, assume the liabilities, and protect the City of Vallejo's

19   interests related to Marine World.  (Id. at 5.)  Moreover, MWJPA

20   bears the "overall responsibility for all activities and

21   facilities at Marine World."  (Pl.'s Opp'n, Evans Decl. Ex. D

22   (Amended and Restated 1997 Management Agreement Relating to

23   Marine World).)

24         Defendant Six Flags, Inc. operates the park pursuant to

25   a long-term lease, paying nominal rent in the amount of one

26   dollar per year per forty acres of land (id. Ex. I (Parcel Lease)

27   at 5), and receiving a management fee and 80% of the net cash

28   flow generated by the combined operations of the park.  (Id. Ex.

F (U.S. Securities and Exchange Commission Form 10-K) at 2.)
Defendant MWJPA receives the remaining 20% of the net revenue.
(Id. Ex. D (Revenue Sharing Agreement) at 9.)

The land at Marine World is divided into two
categories: a public parcel and a private parcel.  (Id. Ex. D at
3.)  The private parcel is leased by Six Flags, Inc., but the
public parcel is, as its name suggests, public land.  (Id.)  The
public parcel includes parking facilities, the front entrance,
the entry area including ticket sales and admission facilities,
public walkways, paths, restrooms, dining facilities, and other
areas intended for use by patrons.  (Id. Ex. J (Reciprocal
Easement Agreement) at 6.)

Plaintiff has been arrested twice for protesting at
Marine World in the "public parcel" section.  On March 20, 2004,
plaintiff went to Marine World for the purposes of engaging in a
protest. (Pl.'s Resp. To Defs.' Statement of Undisputed Facts ¶
1.)  While on a sidewalk outside of the Marine World gates,
Marine World employee defendant Ron Cervantez placed plaintiff
under citizen's arrest for trespass and battery.  (Id. ¶ 2.)
Defendant Officer Bautista, of the Vallejo Police Department, was
dispatched to Marine World to respond to a report of protesters
causing a disturbance.  (Id. ¶ 3.)  Upon arriving at Marine
World, Sergeant Kelly Schroeder instructed Bautista to accept
Cervantez's citizen's arrest, issue the plaintiff a citation for
trespass and battery, and release him at the scene, which
Bautista subsequently did.  (Id. ¶ 5-6.)  Also at Marine World at
that time were defendants Hamrick and Thompson, who had no
involvement in the arrest.  (Id. ¶¶ 7-13.)

1    On May 31, 2004, plaintiff again went to Marine World
2 to engage in protest.  (Id. ¶ 14).  While on a grassy area
3 abutting a sidewalk outside of Marine World gates, Marine World
4 employee defendant Dale Arnold placed plaintiff under citizen's
5 arrest for trespass.  (Id.)  Defendant Officer Wilcox
6 subsequently accepted Arnold's citizen arrest, in the presence of
7 his ranking officer, defendant Lieutenant Salinas.  (Id. ¶¶ 14-
8 15.)  Based on these two incidents, plaintiff was charged with
9 trespass under California Penal Code § 602(o).  (Evans Decl. Ex.
10 L.)  The Superior Court found that the entire park, including the
11 land on which plaintiff had been protesting, was open to the
12 general public.  (Id.)  Accordingly, the case was dismissed on
13 February 15, 2005. (Id.)

14    On May 11, 2005, plaintiff filed a First Amended
15 Complaint ("Complaint") alleging the following twelve causes of
16 action relating to his two arrests: (1) violation of the First
17 Amendment of the United States Constitution (free speech and
18 abuse of process); (2) violation of the California Liberty of
19 Speech Clause, Article I, Section 2(a) of the California
20 Constitution and California Civil Code §§ 52.1 and 1708 (free
21 speech and abuse of process); (3) violation of the Fourth
22 Amendment of the United States Constitution (unlawful seizure);
23 (4) violation of Article I, Sections 1 and 13 of the California
24 Constitution (unlawful seizure); (5) violation of California
25 Penal Code Sections 602.1, 837 and 847 (false arrest); (6)-(7)
26 violation of the Equal Protection Clause of the Fourteenth
27
28

4

1 Amendment to the United States Constitution;[1] (8) conspiracy; (9)

2 assault and battery; (10) abuse of process; (11) false

3 imprisonment; and (12) violations of California Civil Code

4 Sections 51.7 and 52.1 (interference with constitutional rights

5 through coercion).

6      On May 17, 2006, this court granted plaintiff's motion

7 for a preliminary injunction, enjoining defendants from enforcing

8 their Public Assembly Policy as it pertained to plaintiff's

9 planned protests on the following Memorial Day Weekend.  Vallejo

10 Defendants now move for summary judgment, contending that

11 defendants Hamrick and Thompson were not involved in the arrests,

12 that defendants Bautista, Schroeder, Wilcox, and Salinas are

13 entitled to qualified immunity, and that defendant City of

14 Vallejo has no official policy in place that caused a violation

15 of plaintiff's rights.

16 II.  Discussion

17      A. Legal Standard

18           Summary judgment is proper "if the pleadings,

19 depositions, answers to interrogatories, and admissions on file,

20 together with the affidavits, if any, show that there is no

21 genuine issue as to any material fact and that the moving party

22 is entitled to judgment as a matter of law."  Fed. R. Civ. P.

23 56(c).  A material fact is one that could affect the outcome of

24 the suit, and a genuine issue is one that could permit a

25 reasonable jury to enter a verdict in the non-moving party's

26 favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

27

28      [1]    Causes of Action Six and Seven appear to be identical.

5

1 (1986).  The party moving for summary judgment bears the initial

2 burden of establishing the absence of a genuine issue of material

3 fact and can satisfy this burden by presenting evidence that

4 negates an essential element of the non-moving party's case.

5 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

6 Alternatively, the movant can demonstrate that the non-moving

7 party cannot provide evidence to support an essential element

8 upon which it will bear the burden of proof at trial.   Id.

9        Once the moving party meets its initial burden, the

10 non-moving party must "go beyond the pleadings and by her own

11 affidavits, or by 'the depositions, answers to interrogatories,

12 and admissions on file,' [and] designate 'specific facts showing

13 that there is a genuine issue for trial.'"   Id. at 324 (quoting

14 Fed. R. Civ. P. 56(e)).[2]  The non-movant "may not rest upon the

15 mere allegations or denials of the adverse party's pleading."

16 Fed. R. Civ. P. 56(e); Valandingham v. Bojorquez, 866 F.2d 1135,

17 1137 (9th Cir. 1989).  However, any inferences drawn from the

18 underlying facts must be viewed in the light most favorable to

19

20        [2]  Defendants object to much of plaintiff's proffered
evidence, contending that many of the submitted facts are
21 "irrelevant" and/or constitute "conclusory allegations
unsupported by factual detail." (Defs.' Objections to Pl.'s
22 Evidence 3 & 4.)  This court finds these objections to be
spurious, and believes defendants would be well served to give
23 attention to the court's prior rulings.  See Burch v. Regents of
Univ. of Ca., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (noting
24 that "objections to evidence on the ground that it is irrelevant,
speculative, and/or argumentative, or that it constitutes an
25 improper legal conclusion are all duplicative of the summary
judgment standard itself; yet attorneys insist on using
26 evidentiary objections as a vehicle for raising this point.  A
court can award summary judgment only when there is no genuine
27 dispute of material fact. It cannot rely on irrelevant facts, and
thus relevance objections are redundant.")

28

1   the party opposing the motion.   <u>Matsushita Elec. Indus. Co., Ltd.</u>

2   <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

3        B.  <u>Timely Filing of Opposition</u>

4            Defendants, in their motion for summary judgment, argue

5   that because plaintiff filed his opposition on October 3, 2006,

6   one day later than the October 2 deadline, the court should not

7   consider the opposition.  "When a party opposing summary judgment

8   fails to comply with the formalities of Rule 56, a court may

9   choose to be somewhat lenient in the exercise of its discretion

10  to deal with the deficiency."  <u>School Dist. No. 1J, Multnomah</u>

11  <u>County, Or. v. ACandS</u>, Inc., 5 F.3d 1255, 1261 (9th Cir. 1993)

12  (citing <u>Scharf v. United States Att'y Gen.</u>, 597 F.2d 1240, 1243

13  (9th Cir. 1979)).  The Ninth Circuit has "repeatedly held that a

14  motion for summary judgment cannot be granted simply because the

15  non-moving party violated a local rule."  <u>Couveau v. Am.</u>

16  <u>Airlines, Inc.</u>, 218 F.3d 1078, 1081-82 (9th Cir. 2000).  "Cases

17  should be decided on their merits whenever reasonably possible."

18  <u>Jones v. Tozzi</u>, 2006 WL 355175, *4  (E.D. Cal. Feb. 15, 2006)

19  (citing <u>Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814

20  (9th Cir. 1985)).  It is true that plaintiff's motion was indeed

21  filed at 2:17am on the morning of October 3, 2006.  However, as

22  in <u>Jones</u>, defendant has shown no actual prejudice or

23  inconvenience resulting from the two hour delay, and this court

24  thinks it unlikely that any exists.  <u>Id.</u> (overlooking a two day

25  delay in filing an opposition, due to a finding of no prejudice

26  or inconvenience).  Therefore, the court will consider

27  plaintiff's opposition.

28  ///

7

1       C. <u>Defendants Hamrick and Thompson</u>

2               Plaintiff concedes that defendants Hamrick and Thompson

3  had no involvement in either of plaintiff's arrests. (Pl.'s Resp.

4  To Defs.' Statement of Undisputed Facts 8), and has therefore

5  stipulated to the granting of defendants Hamrick and Thompson's

6  motions for summary judgment on all claims.  (Pl.'s Opp'n 5.)

7       D. <u>Defendants Bautista, Schroeder, Wilcox[3] and Salinas</u>

8               1. <u>Qualified Immunity</u>

9               As an affirmative defense, defendants Bautista, Wilcox,

10 Salinas and Schroeder assert that they are entitled to qualified

11 immunity.  Qualified immunity protects "government officials

12 performing discretionary functions . . . from liability for civil

13 damages insofar as their conduct does not violate clearly

14 established statutory or constitution rights of which a

15 reasonable person should have known."  <u>Romero v. Kitsap County</u>,

16 931 F.2d 624, 627 (9th Cir. 1991) (quoting <u>Harlow v. Fitzgerald</u>,

17

18      [3]     Plaintiff contends that defendant Wilcox did not
   properly notice his motion for summary judgment, as a result of
19 his inserting his name into an amended notice of summary
   judgement filed after a court-ordered deadline.  As noted above,
20 however, there is a strong presumption in favor of hearing cases
   on the merits whenever possible.  <u>See</u> <u>Pena</u>, 770 F.2d at 814.  In
21 this case, the court would find it difficult to believe that the
   plaintiff was inadequately noticed, given that the arguments put
22 forth in the accompanying motion explicitly named Officer Wilcox.
   Moreover, even if this had not been the case, the arguments made
23 against Officer Wilcox regarding immunity under California Penal
   Code Section 847 are identical to those made against Officer
24 Bautista, and the arguments against Officer Wilcox regarding
   general qualified immunity are identical to those made against
25 all other defendant officers.  Therefore, in briefing all of the
   issues against the properly noticed defendants, plaintiff also
26 briefed all issues relating to Officer Wilcox.  Plaintiff was
   thus effectively put on notice as to the substance of all issues,
27 so as to avoid any undue inconvenience or prejudice. This court
   will therefore consider defendant Wilcox's motion for summary
28 judgment.

8

1  457 U.S. 800, 818 (1982)) (internal quotations omitted).  The

2  test for qualified immunity thus "necessitates three inquires: 1)

3  the identification of the specific right violated; 2) the

4  determination of whether that right was so 'clearly established'

5  as to alert a reasonable officer to its constitutional

6  parameters; and 3) the ultimate determination of whether a

7  reasonable officer could have believed lawful the particular

8  conduct at issue."  Id.

9       A right is clearly established when "the contours of

10  the right [are] sufficiently clear that a reasonable official

11  would understand that what he is doing violates that right."

12  Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993) (citing

13  Anderson v. Creighton, 483 U.S. 635 (1987)) (internal quotations

14  omitted).  In making that assessment, the plaintiff must offer

15  more than general conclusory allegations that the defendants

16  violated a constitutional right.  Sweaney v. Ada County, Idaho,

17  119 F.3d 1385, 1389 (9th Cir. 1997).  He must show "that the

18  particular facts of his case support the claim of a clearly

19  established right."  Id. (citing Backlund v. Barnhart, 778 F.2d

20  1386, 1389 (9th Cir. 1985)).  However, a plaintiff need not show

21  that the exact action challenged was previously held unlawful,

22  but merely that "in light of pre-existing law the unlawfulness

23  [is] apparent."  Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir.

24  1994) (quoting Anderson, 483 U.S. at 640); see also Sweaney, 119

25  F.3d at 1389 ("The absence of any authority directly on point is

26  not fatal to a section 1983 claim.  A right is clearly

27  established '[i]f the only reasonable conclusion from binding

28  authority were that the disputed right existed.'") (citing

9

1   <u>Blueford v. Prunty</u>, 108 F.3d 251, 255 (9th Cir.1997)).

2          The basic right that plaintiff asserts in this case is

3   his right to peacefully protest on specific public parcels of

4   land near the Marine World property without being subject to

5   arrest.  This is couched in terms of both First and Fourth

6   Amendment violations.  Under federal law "[p]ublic property,

7   depending on its character, falls within one of three main

8   categories for purposes of First Amendment analysis."  <u>Preminger</u>

9   <u>v. Principi</u>, 422 F.3d 815, 823 (9th Cir. 2005) (citing <u>Perry</u>

10  <u>Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45

11  (1983)) (discussing the categories of traditional public fora,

12  designated public fora, and nonpublic fora).[4]  In this instance,

13  the videotape submitted by plaintiff clearly shows members of the

14  public walking through both the sidewalk and the grassy area, the

15  two sites where plaintiff was arrested.  (Kuba Decl. B.

16  (Video).)[5]  Moreover, there do not appear to be any signs or

17  fences marking off these areas or indicating that the land was

18  not generally open to the public.  Thus, these two areas appear

19  to be, in the very least, designated public fora, i.e., property

20

21

22          [4]     "Public fora are places, such as streets and parks,
    that have traditionally been devoted to expressive activity. . .
23  .  Designated public fora are areas that the government
    affirmatively has opened to expressive activity. . . . Nonpublic
24  fora [are] areas that have not traditionally or explicitly been
    open to expressive activity."  <u>Perry Educ. Ass'n</u>, 460 U.S. at 45.
25
          [5]     Defendants object to the general references to
26  plaintiff's video, claiming that it does not constitute a
    designation of sufficiently specific facts.  (Defs.' Objections
27  to Pl.'s Evidence 1.)  This court had no difficulty, however,
    identifying the relevant portions of the video cited to by
28  plaintiff, and will therefore consider this evidence.

1  "which the state has opened for use by the public."[6]

2          For a designated public forum, as long as the state

3  holds the property open to the public, "it is bound by the same

4  standards as apply in a traditional public forum." Perry Educ.

5  Ass'n, 460 U.S. at 45.  It is beyond dispute that "public

6  sidewalks, streets, and ways . . . are 'quintessential' public

7  forums for free speech." Hill v. Colorado, 530 U.S. 703 (2000);

8  see also Schenck v. Pro-Choice Network, 519 U.S. 357 (1997).

9  Nonetheless, the state may enforce "regulations of the time,

10 place, and manner of expression which are content-neutral, are

11 narrowly tailored to serve a significant government interest, and

12 leave open ample alternative channels of communication." Id.

13 Thus, plaintiff's right to protest is "clearly established" in

14 law so as to satisfy the second step of the Romero analysis.

15         The final step in analyzing qualified immunity requires

16 an objective analysis of whether the officers' conduct in this

17 instance was reasonable. Anderson v. Creighton, 483 U.S. 635,

18 641 (1987).  The relevant inquiry is whether a "reasonable

19 officer" in the defendant's position could have believed that the

20 conduct at issue was lawful. Id.  Indeed, while the first two

21 inquiries in Romero present pure questions of law, the third may

22 require factual determinations. Romero, 931 F.2d at 628 (citing

23 Gooden v. Howard, 917 F.2d 1355, 1361 (4th Cir. 1990)).  Thus,

24 once plaintiff has established that his right is clearly

25 established, the burden of production shifts to the officers to

26

27         [6]   As noted in this court's order on plaintiff's
   preliminary injunction, under California law, this parcel of land
28 is public as well. (May 17, 2006 Preliminary Injunction at 10.)

                                11

1  prove that their conduct was reasonable.  <u>DeNieva v. Reyes</u>, 966

2  F.2d 480, 486 (9th Cir. 1992) (citing <u>Romero</u>, 931 F.2d at 627).

3         Defendants claim that they "did not arrest the

4  Plaintiff for trespass.  They simply accepted the citizen's

5  arrest, in compliance with the law, and are therefore entitled to

6  qualified immunity."  (Defs.' Mot. for Summ. J. at 9:15-16.)  A

7  police officer, however, is not entitled to hide behind a

8  citizen's arrest in place of making a determination of whether

9  probable cause exists.  <u>See</u> <u>Arpin v. Santa Clara Valley Transp.</u>

10 <u>Agency</u>, 261 F.3d 912, 924 (9th Cir. 2001) (noting that a

11 warrantless misdemeanor arrest "must be supported by probable

12 cause to believe that the arrestee has committed a crime.")

13 (citing <u>Allen v. City of Portland</u>, 73 F.3d 232, 236 (9th Cir.

14 1995)).

15        Prior to and during both arrests of plaintiff,

16 plaintiff repeatedly pointed out to the police officers that the

17 land he was on was open to the public, the truth of which was

18 clearly observable in plaintiff's video.  (Kuba Decl. B.)  People

19 can be seen freely coming and going both on the sidewalk and the

20 grassy area, and there is not anything indicating that the

21 apparently public land was in fact private. (<u>Id.</u>)  Defendants

22 have not put forth any evidence, nor referred to any facts, to

23 demonstrate probable cause for either arrest.  To the contrary,

24 under some intense interrogation by the court at oral argument,

25 defendants' counsel was unable to identify a single provision of

26 the California Penal Code which had reason to believe was

27 violated by plaintiff's conduct.

28        From a review of the video it appears that defendants

were attempting to justify their actions on the ground that they
were required to accept a citizen's arrest.  Such an attempt to
delegate to a private citizen the officers' own duty to
investigate probable cause is contrary to clearly established
Ninth Circuit law.  <u>Arpin</u>, 261 F.3d at 924.  On the evidence
currently before it, taken in the light most favorable to the
plaintiff, <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), the
evidence before the court fails to show why it was objectively
reasonable for defendants officers to arrest plaintiff while he
was on the public land and not violating any criminal statutes.
Qualified immunity is an affirmative defense, and defendants have
failed to meet their requisite burden.  <u>DeNieva</u>, 966 at 486.  At
this point the defense must fail, and defendants motion for
summary judgement on plaintiff's federal claims based on
qualified immunity must be denied.

          2. <u>State Law Claims</u>

          Plaintiff has stipulated that his state law claims
against the Vallejo Defendants should be dismissed.  The second,
fourth, fifth, eighth, ninth, tenth, eleventh, and twelfth causes
of action will therefore be dismissed as against defendants
Bautista, Schroeder, Wilcox and Salinas._____

     E. <u>Defendant City of Vallejo</u>

          A city may only be sued under 42 U.S.C. § 1983 when
"the action that is alleged to be unconstitutional implements or
executes a policy statement, ordinance, regulation, or decision
officially adopted and promulgated by that body's officers."
<u>Monell v. Dept. of Social Servs. of New York</u>, 436 U.S. 658, 690
(1978).  Such a policy can either be an official city policy or

13

1  merely a pervasive custom.  <u>Los Angeles Police Protective League</u>

2  <u>v. Gates</u>, 907 F.2d 879, 889 (9th Cir. 1990).  In the alternative,

3  the city may be liable if it "made a 'deliberate' or 'conscious'

4  choice to fail to train its employees adequately."  <u>Boyd v.</u>

5  <u>Benton County</u>, 374 F.3d 773, 784 (9th Cir. 2004) (citing

6  <u>Mackinney v. Nielsen</u>, 69 F.3d 1002, 1010 (9th Cir. 1995)).

7          Plaintiff argues that there "is evidence that the

8  Vallejo Police Department had a policy of mandating the taking of

9  citizen's arrests when requested by a citizen, without regard to

10 whether there was probable cause. . . ." (Pl.'s Opp. 24).

11 Indeed, in depositions taken of Officers Bautista and Wilcox,

12 both defendants admit that at the time of the arrest, it was

13 their understanding that they were obligated to accept a

14 citizen's arrest.  (Bautista Dep. 20:2-21:9; Wilcox Dep. 12:7-

15 11.)[7]  This evidence is corroborated by statements made by

16 defendants Salinas and Bautista on the video tape, to the same

17 effect.  (Kuba Decl. B.)

18         To impute liability at the city level, however, the

19 practice in question must go beyond mere "random acts or isolated

20 events," but must be the result of "a permanent and well settled

21 practice."  <u>Thompson v. City of Los Angeles</u>, 888 F.2d 1439, 1444

22 (9th Cir. 1989) (internal quotations omitted).  Here, defendants

23 have submitted Vallejo Police Department Special Order 2003-1, an

24 internal memo sent to all police officers on January 1, 2003,

25

26         [7]   Defendants object to plaintiff's characterizations of
   defendants' deposition testimony.  (Defs.' Objections to Pl.'s
27 Evidence 2.)  This court, however, need not adopt plaintiff's
   characterizations, but will instead rely directly on the
28 defendants' deposition testimony.

                                   14

1   informing them that going forward, they were required to assess

2   probable cause before accepting citizen's arrests.  (Decl. of

3   Robert Nichelini Ex. B.)

4           This evidence does not resolve the question, however,

5   for it is still entirely possible that despite this memo, police

6   practice continued to consist of accepting citizen's arrests

7   without assessing probable cause.  Indeed, the two incidents at

8   issue in this case at the very least raise an inference that such

9   a custom might have continued to exist.  If in fact there was

10  such a custom, pervasive throughout the police department,

11  obviating the officers' obligation to make an independent

12  determination of probable cause for an arrest, then that custom

13  would be improper.  <u>Arpin</u>, 261 F.2d at 925 ("In establishing

14  probable cause, officers may not solely rely on the claim of a

15  citizen witness that he was the victim of a crime, but must

16  independently investigate the basis of the witness' knowledge or

17  interview other witnesses."); <u>see also</u> <u>Corcoran</u>, 160 F. Supp. at

18  1091-92 (holding that a policy permitting officers to arrest

19  persons pursuant to a citizen's arrest without probable cause was

20  unconstitutional).

21          Further, from the officers' statements on the video

22  tape, they did not appear to have a clear and consistent

23  understanding of the rights of individuals on public property,

24  such as that on which plaintiff was arrested.  Thus, although

25  certainly not dispositive of the question, the evidence before

26  the court demonstrates genuinely disputed issues of material fact

27  as to whether the officers' lack of knowledge was the result of

28  deliberate indifference on the part of the City of Vallejo.  The

15

City's motion for summary judgment on plaintiff's federal claims must accordingly be denied.  Fed. R. Civ. P. 56(c).[8]

IT IS THEREFORE ORDERED that:

(1) defendants Hamrick and Thompson's motion for summary judgment on all causes of action be, and the same hereby is, GRANTED;

(2) defendants Bautista, Schroeder, Wilcox, Salinas, City of Vallejo and Vallejo Police Department's motion for summary judgment on the second, fourth, fifth, eighth, ninth, tenth, eleventh, and twelfth causes of action be, and the same hereby is, GRANTED; and

(3) with respect to all other defendants and claims, defendants' motion for summary judgment be, and the same hereby is, DENIED.

DATED:  October 23, 2006

_WILLIAM B. SHUBB_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[8]     Because plaintiff has stipulated to the dismissal of all state law claims against all Vallejo Defendants, the state law claims against the City of Vallejo will be dismissed.